IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **UNILOC USA, INC. and UNILOC LUXEMBOURG S.A.,** § § § | |
| *Plaintiffs,* § | Civil Action No. 6:13-cv-259 [LED] |
| § § | |
| **v.** § | |
| § | |
| **ELECTRONIC ARTS, INC.,** § § § | |
| § | |
| *Defendant.* § § | |

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW ON PRE-SUIT DAMAGES**

**INTRODUCTION**

In a finding amply supported by the record, the jury found that Uniloc complied with the marking statute, 35 U.S.C. § 287, entitling Uniloc to pre-suit damages. EA now suggests that Uniloc's complete success at trial eliminates Uniloc's right to seek—and the Court's power to grant—judgment as a matter of law on Uniloc's alternative marking arguments. EA is wrong. The Court may revisit its previous decisions in now ruling on Uniloc's Rule 50(b) motion, and there is nothing "advisory" about such a ruling. Courts often resolve the same issue on alternative grounds, and full consideration is useful given the risk—however small—that the jury's findings might be reversed on appeal.

Uniloc's alternative arguments are also correct. First, Uniloc gave EA actual notice under Section 287 through the 2010 lawsuit. As the patent-owner, Uniloc (like its predecessors in ownership) was the only party that could give effective actual notice, rendering it unnecessary to involve Sureloc, Uniloc's putative licensee. And EA's attacks on the 2010 Complaint are insufficient. EA says the suit did not mention the Origin system

specifically and was served before Origin began to infringe. But this ignores the simple reality that the 2010 Complaint placed EA on notice, *in 2010*, of the existence of the '216 Patent, and the risk that features of EA's registration and activation system might infringe. This fulfilled both the letter and spirit of Section 287.

Second, the invention described in the '216 Patent falls outside the scope of Section 287, and EA's contrary suggestion fails. Uniloc tried to mark its products in a good-faith attempt to comply with the statute; its efforts do not "admit" that the invention could be marked. Indeed, EA cannot identify any product produced by Uniloc or its licensees that actually embodies the patented invention. There is therefore no concrete showing how Uniloc might have otherwise strictly complied with the marking statute.

## ARGUMENT AND AUTHORITIES

**I.    The Court May Rule on Uniloc's Alternative Marking Arguments.**

At the outset, Uniloc's favorable jury finding on marking does not preclude Uniloc from seeking judgment as a matter of law on alternative grounds rejected during the charge conference. (Dec. 4, 2014 (PM) 124:14-125:5) Parties frequently revisit objections during the charge conference in post-verdict motions under Rule 50(b). *See, e.g.*, *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003-04 (5th Cir. 1997) (citing cases). And under controlling regional law, the Court can revisit any decision it finds incorrect until judgment is entered. *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970).

EA is mistaken that the jury's finding renders these arguments moot or the Court's consideration "advisory." (Dkt. 107 at 1) Courts are always free to rule on alternative grounds supporting the same result, particularly when, as here, the initial ground may be challenged on appeal. *See, e.g.*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) ("The Federal Circuit's decision to rely on one of two possible alternative grounds

(noninfringement rather than invalidity) did not strip it of *power* to decide the second question, particularly when its decree was subject to review by this Court."). There is nothing improper about the relief sought in Uniloc's motion.

## II. Uniloc's Infringement Suit Gave EA Actual Notice of Its Infringement.

In 2010, Uniloc, the undisputed patent-owner, sued EA on the ground that its registration and activation system infringed. EA now insists that Uniloc never provided actual notice because Sureloc was not involved in the lawsuit, and the complaint did not specifically identify Origin, and was served before the infringing version of Origin went into service. But EA's insistence that these minor issues make Uniloc's notice ineffective would insert wooden, technical requirements that are not present in Section 287.

### A. Uniloc had sufficient rights to give notice of infringement.

First, EA's continued insistence that Sureloc had to have some (unspecified) involvement in the 2010 lawsuit conflicts not only with Section 287's plain text, but with the very authorities upon which EA relies. As Uniloc previously explained, Section 287 makes "the patentee"—and the patentee alone—responsible for giving notice under Section 287. (Dkt. 101 at 5 (citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)).

EA's own authorities confirm that the lawful owner can give effective notice. For instance, as Uniloc explained (Dkt. 101 at ) but EA ignores, *Lans v. Digital Equipment Corp.* requires that the *patentee* provide notice of infringement—not the inventor or licensees. 252 F.3d 1320, 1327 (Fed. Cir. 2001). Only the "patentee's identity" is critical and must be disclosed, because the *patentee* ultimately controls licensing. *Id.* While *Lans* does not preclude others from being involved in the notice process, it identifies the patentee as the *sole* indispensable party to make notice effective.

3

For this reason, as Uniloc explained (and EA again ignores), even if EA is correct that, to be effective, the notice must identify the entity that "control[s] licensing rights," Uniloc *did* "control licensing rights" for the '216 Patent. This stems not only from Uniloc's ownership of the patent, but also from its ultimate control over licensing under the PC Preload license—because PC Preload (Sureloc's supposed predecessor) could only sublicense its rights with Uniloc's approval. (DX236_002)

EA's reliance (Dkt. 107 at 3) on *Clouding IP, LLC v. Google*, 2014 WL 3767489 (D. Del. July 14, 2014), and *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995), is likewise misplaced. First, neither case actually involved Section 287's notice requirement, but instead concerned whether patent licensees have sufficient rights to have standing to sue for infringement. But even if the power to give notice can be equated with the standing inquiry, both *Abbott Laboratories* and *Clouding*—again—identify the *patentee* as the proper party having such standing. Because "[t]he right to sue for infringement is ordinarily an incident of legal title to the patent," that right belongs to the patent owner, not even an exclusive licensee (unless the license is effectively a transfer of ownership). *Abbot Labs.*, 47 F.3d at 1131. Thus both *Abbott Laboratories* and *Clouding* make clear that while a *licensee* who wishes to enforce the patent must normally join the *patent owner* in order to have standing, the true patent owner can bring suit alone. *See Clouding,* 2014 WL 3767489, *3-4; *Abbott Labs.*, 47 F.3d at 1130-31; *see also Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). Accordingly, under EA's own authorities, because Uniloc held legal title to the patent, it had the necessary power to convey notice without involving Sureloc.

Even at its most aggressive, EA never suggests that the PC Preload license

conveyed title to the '216 Patent to PC Preload—nor could it, because, as EA concedes (Dkt. 107 at 4), Uniloc retained substantial rights under that license, including the right to terminate the agreement for cause (DX236_2-3). *See Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359-61 (Fed. Cir. 2010) (agreements terminable at the licensor's option do not transfer ownership). Uniloc had the rights necessary to notify EA that its registration and activation system might infringe.

In any event, to the extent Uniloc *needed* additional rights to give effective notice, it certainly possessed those rights. The settlement with Sureloc confirmed this: Uniloc "or its predecessor in interest Uniloc Singapore, held legal title to the '216 Patent with the right to enforce the '216 Patent in all territories and all fields of use." (PX 37 Recital F)

The settlement agreement did not, as EA argues, "retroactively" give Uniloc "full rights to the '216 Patent." (Dkt. 107 at 3) As Uniloc explained (Dkt. 101 at 5), it merely *confirmed* the rights that Uniloc had all along as the undisputed owner of the '216 Patent—rights that had *never* been taken away, even by the PC Preload license or events in the California litigation. And it is ironic that EA now claims the settlement agreement is not "binding" on EA (Dkt. 107 at 3-4), when EA relied on another private agreement to which it is not a party, the PC Preload license, to claim—incorrectly—that Uniloc lacked "standing" to give it notice. Indeed, that is precisely the point—these private agreements have nothing to do with whether EA received the notice required under Section 287.

Likewise, the California trial court's decision—which, *at best*, showed only that Sureloc was a proper successor to the PC Preload license—did nothing to diminish Uniloc's authority to enforce its patent rights. It could not, because, as EA concedes, that decision had no preclusive effect. (Dkt. 107 at 4) EA cannot escape the non-binding

5

character of that decision by suggesting that this Court adopted its "reasoning" rather than deeming itself bound by that decision. The Court was never presented with evidence from which it could independently determine that this tentative ruling was correct. As EA admits, the PC Preload license automatically terminated upon dissolution or liquidation (Dkt. 107 at 4; XX 236 ¶2(b)), and the only evidence in the record suggests that PC Preload "went out of business," "closed its doors forever," "discontinued business," had "no assets," notified shareholders of its dissolution, and lost the right to conduct business in California. (Dec. 2, 2014 (AM) Trial Tr. 65:8-66:10; 82:10-13, 84:10-19, 110:25-111:8, 112:17-22, 113:1-11) There is nothing in the record at trial, or even in the California Court's order (DX 138), from which this Court could conclude that *anything* of PC Preload survived to keep the PC Preload license alive. Thus, to the extent the Court *independently* determined that PC Preload had not been dissolved or liquidated, that holding rests on legally insufficient evidence. And because this evidence was non-existent, Uniloc had no obligation to prove that the PC Preload license had terminated—only that the California court's decision had no preclusive effect, which it does not.

### B.   Uniloc was not required to name Origin specifically.

EA's argument that the 2010 lawsuit was insufficiently specific to put EA on notice is similarly faulty. First, despite EA's insistence, neither *Amstead Industries* nor *Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001) would require Uniloc to name Origin specifically for the 2010 Complaint to provide sufficient notice. The 2010 Complaint, in compliance with both *Amstead* and *Gart*, made a "specific charge" of infringement connected to a "specific device"—or at least a specific *system*—EA's activation and registration system for its game products. Nothing in either *Gart* or *Amstead* would require that Uniloc name the specific components or mechanisms on which the infringing

operations took place. As in *Technology Licensing Corp. v. Thomson, Inc.*, which Uniloc cited in its motion but EA ignores, a complaint can convey notice under Section 287 by identifying only general categories that might include infringing products. 738 F. Supp. 2d 1096, 1103-04 (E.D. Cal. 2010). This is because the "purpose of the notice requirement is met"—and the actual notice requirement satisfied—when "the recipient is informed of the identity of the patent and the activity" *in general* that is "believed to be an infringement." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). The absolute precision that EA demands is not required for effective notice under Section 287. Indeed, a contrary rule would often make providing notice impracticable for patentees lacking pre-suit access to the infringer's systems.

It is likewise irrelevant that EA did not employ Origin 9.1, the first infringing version, until after the 2010 Complaint was filed. "The requirement of actual notice under § 287(a) is designed to assure that the recipient knew of the adverse patent during the period in which liability accrues." *SRI*, 127 F.3d at 1462. That purpose is served even if the notice arrives before the specific activity alleged to infringe. EA was on notice in 2010, when the Complaint was filed, of Uniloc's "specific charge" that its system for activating and registering software contained features that might infringe the '216 Patent, and the parties have been actively litigating these issues ever since. EA cannot avoid paying damages for its choice to *add* infringing features to that system after receiving notice.

This does not, as EA suggests, "substitute[] EA's alleged subjective belief" for actual notice by Uniloc. (Dkt. 107 at 6) Rather, this appropriately focuses on the "action of the patentee" in giving notice, not the "knowledge or understanding of the infringer." *Amstead Indus.*, 24 F.3d at 187. By serving EA with the 2010 lawsuit, Uniloc *took action*

7

that ensured EA knew of its patent and the activity that Uniloc believed to infringe, and that action is Uniloc's basis for satisfying Section 287. For that notice to be effective, it makes no difference whether EA knew of the patent before that time, or formed its own opinions on whether its technology infringed during the course of the lawsuit. Indeed to hold otherwise would lead to absurd results, because it would require that Uniloc give EA notice *twice* during the course of *a patent infringement lawsuit* of the patent's existence and Uniloc's belief that EA's system infringed. EA's arguments that the 2010 Complaint was not sufficiently specific should be rejected.

### III. If Any Patented Article Exists in this Case, It Is Not Susceptible to the Marking Requirement Under 35 U.S.C. § 287.

In addressing Uniloc's argument that the invention described in the '216 Patent falls outside Section 287's scope, EA's response is notable in what it concedes. EA *admits* that only a product that "embod[ies] the invention" must be marked. (Dkt. 107 at 7) Yet EA never denies that the '216 Patent's invention describes a registration system comprised of multiple hardware components and software that do not individually embody the Patent. Nor does EA dispute that it bore the burden to identify the components of this system that should have been marked, even though it *still* makes no attempt to identify any relevant patented article. EA likewise never disputes the fact that any marking, if it occurred, would be fruitless, and in conflict with Section 287's basic purpose, because the system described in the '216 Patent is by its nature secret and private, not disseminated to the public. And, indeed, EA never attempts to rectify the conflict between its argument that Uniloc was obliged to ensure that its licensees marked with its contention that EA lacked the power to enforce its own patent. EA therefore never actually explains how Uniloc could have any obligation to mark under Section 287.

8

EA's arguments that marking should nevertheless be required are unpersuasive. First, EA cites no principle of law—because there is none—to the effect that a patentee who makes a good-faith attempt to mark a product is "estopped" from denying that its invention falls outside Section 287. In any event, Uniloc's attempts at marking should not be construed as an admission that the product could be marked, but instead should be viewed as Uniloc's attempt to mark Uniloc's best approximation of an actual "product," and the only plausible option for this type of invention. Further, EA's reference to Alt-N's "product" is ironic, because EA never explains what this product was, and Alt-N's own corporate representative could not confirm whether Alt-N actually produced an article that would have to be marked. (Dec. 4, 2014 (AM) Trial Tr. 94:11-13, 99:21-100:10)

Holding that the registration system described in Claim 19 of the patent cannot be marked would not, as EA suggests, "limit marking obligations to only those products that the patentee *believes* practice the claim." (Dkt. 107 at 7 (emphasis added)) Rather, it simply means that only articles that *actually* embody the invention must be marked, and there is no requirement to mark products that do not. Moreover, Uniloc is not attempting to focus on whether the particular "claim," rather than the entire invention, can be marked—because all of the claims of the '216 Patent require a remote registration station, a local client computer, and software that communicates between them, so none of the claims in the patent describe a product that can be marked. The Court should therefore hold that the invention described in the '216 Patent falls outside Section 287 as a matter of law.

## CONCLUSION

For these reasons, and the reasons stated in Uniloc's motion, Uniloc respectfully requests that the Court grant Uniloc's renewed motion for judgment as a matter of law, entering judgment that Uniloc's damages are not limited by 35 U.S.C. § 287, because:

Uniloc had no obligation to mark any of its products, or those of its licensees, because the invention embodied in the '216 Patent falls outside the scope of Section 287; and

Uniloc complied with Section 287 as a matter of law by providing EA actual notice of its infringement by actually *suing* EA for infringement in 2010.

Respectfully submitted,

/s/ J. Carl Cecere

| | |
|---|---|
| **James L. Etheridge**<br>  Bar No. 24059147<br>jim@EtheridgeLaw.com<br>**Etheridge Law Group, PLLC**<br>2600 E. Southlake Blvd., Suite 120 / 324<br>Southlake, Texas 76092<br>Tel: (817) 470-7249<br>Fax: (817) 887-5950 | **J. Carl Cecere**<br>  State Bar No. 24050397<br>**Cecere PC**<br>6035 McCommas Blvd.<br>Dallas, Texas 75206<br>Telephone: 469.600.9455<br>ccecere@cecerepc.com<br><br>**E. Leon Carter**<br>  State Bar No. 03914300<br>lcarter@carterscholer.com<br>**Ryan S. Loveless**<br>  State Bar No. 24036997<br>rloveless@carterscholer.com<br>**J. Robert Arnett II**<br>  State Bar No. 01332900<br>barnett@carterscholer.com<br>**John S. Torkelson**<br>  State Bar No. 00795154<br>jtorkelson@carterscholer.com<br>**Linda R. Stahl**<br>  State Bar No. 00798525<br>lstahl@carterscholer.com<br>**Courtney Barksdale Perez**<br>  State Bar No. 24061135<br>cperez@carterscholer.com<br>**Rachany T. Son**<br>  State Bar No. 25081969<br>rson@carterscholer.com<br>**Carter Scholer Arnett Hamada &<br>  Mockler, PLLC**<br>8150 N. Central Expy, 5th Floor<br>Dallas, Texas 75206<br>Tel: 214.550.8188<br>Fax: 214.550.8185<br><br>*Counsel for Plaintiffs Uniloc USA,<br>Inc. and Uniloc Luxembourg S.A.* |

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure on January 29, 2014.

*/s/ J. Carl Cecere*

**J. Carl Cecere**